**BESHADA FARNESE LLP**
Peter J. Farnese (SBN 251204)
pjf@beshadafarneselaw.com
11601 Wilshire Blvd., Suite 500
Los Angeles, California 90025
Telephone: 310-356-4668
Facsimile: 310-388-1232

*Attorneys for Plaintiff,*
*My Pillow, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MY PILLOW, INC., a Minnesota Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHOPIFY (USA) INC., a Delaware Corporation, and DOES 1-10, individually and d/b/a www.MyPillowStore.com, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>(1) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1125(a);<br><br>(2) FALSE DESIGNATION OF ORIGIN, PASSING OFF & UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a) and §1117(a);<br><br>(3) COMMON LAW TRADEMARK INFRINGEMENT<br><br>(4) COMMON LAW UNFAIR COMPETITION<br><br>**JURY TRIAL DEMANDED** |

BESHADA
FARNESE LLP

COMPLAINT

Plaintiff My Pillow, Inc. (hereinafter referred to as "My Pillow" or "Plaintiff") for the causes of action against Defendant Shopify (USA) Inc. ("Shopify"), DOES 1 through 10 individually and d/b/a www.MyPillowStore.com, (hereinafter referred to as "Defendant(s)"), inclusive, and each of them, alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trademark infringement, trademark dilution, unlawful and unfair business practices, and related causes of action under federal and common law.

2. By this action, My Pillow seeks to remedy Defendants' repeated, persistent, and intentional infringement of My Pillow's intellectual property rights related to My Pillow's famous "MYPILLOW" Marks[1] and the likeness of its CEO and founder, Mike Lindell.

## PARTIES

3. Plaintiff My Pillow ("Plaintiff" or "My Pillow") is a Minnesota Corporation, having its principal place of business at 343 East 82nd Street, Suite 100, Chaska, Minnesota 55318.

4. Defendant Shopify (USA), Inc. ("Shopify") is a Delaware corporation with its agent for service of process located at: 818 W Seventh St., Suite 930, Los Angeles, California 90017.

5. The true names, identities and capacities, whether individual, associate, corporate or otherwise, of Defendants DOES 1 through 10, individually and d/b/a www.mypillowstore.com inclusive, and each of them (the "DOE Defendants"), are

---

[1] The term "My Pillow Marks" refers to Plaintiff's MYPILLOW word and design trademarks and "GUARANTEED THE MOST COMFORTABLE PILLOW YOU'LL EVER OWN" trademark described herein.

BESHADA
FARNESE LLP

unknown to Plaintiff at this time, who therefore sues the DOE Defendants by such fictitious names. When the true names and capacities or participation of the DOE Defendants are ascertained, Plaintiff will amend this complaint to assert the true names, identities and capacities. Plaintiff is informed and believes and thereon alleges that each of the DOE Defendants sued herein is responsible for the wrongful acts alleged herein, and is therefore liable to Plaintiff in some manner for the events and happenings alleged in this complaint. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, the DOE Defendants were and are doing business and/or residing in this District.

**JURISDICTION AND VENUE**

6. Subject matter jurisdiction over the federal Lanham Act claims in this action is conferred upon this Court pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§1331, 1338 and 1367.

7. This Court has jurisdiction over Plaintiff's related California state law claims under 28 U.S.C. §§ 1338 and 1367. Jurisdiction is further based upon 28 U.S.C. § 1332, the parties being of different states and the amount in controversy being in excess of the jurisdictional minimum, $75,000, excluding interest and costs.

8. Upon information and belief, this Court has personal jurisdiction over Defendant in that Defendant has extensive contacts with and regularly conducts, transacts and/or solicits business in the State of California and this judicial District.

9. Upon information and belief, venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) because Defendants have extensive contacts with, and conduct business in, the State of California and this judicial District.

/ / /
/ / /

## FACTUAL ALLEGATIONS

**Plaintiff My Pillow's Well-Known "MYPILLOW" Marks**

10. Plaintiff My Pillow is a leading producer of bed pillows that contain its proprietary, interlocking fill that will not "go flat" like other pillows. My Pillow manufactures its products in the United States at its headquarters in Minnesota.

11. My Pillow expends substantial sums of money to produce and air national television, radio, print, and internet advertising, to promote and sell its products. As a result of this advertising, Plaintiff has sold over 30 million pillows and the MYPILLOW brand, and has, along with its founder and CEO Mike Lindell, generated substantial customer goodwill to become one of America's the most widely-recognized brands.

12. In or about October 2004, My Pillow began marketing and selling its pillows with its proprietary, interlocking fill under the brand name, "MYPILLOW." My Pillow has continued to produce, market and sell its "MYPILLOW" brand pillow products and has sold millions of units of its "MYPILLOW" brand pillow products, with total sales exceeding several hundred million dollars.

### A. Plaintiff's "MYPILLOW" Trademarks

13. Since October 2004, My Pillow and its predecessor company has continuously used the MYPILLOW trademarks in interstate commerce in connection with the advertising, distribution, marketing and sale of its pillow products, including through its website www.mypillow.com. My Pillow is the owner of all right, title and interest in the common law trademark MYPILLOW.

14. While My Pillow has gained significant common law trademark and other rights in the MYPILLOW Marks and the My Pillow Products through its use, advertising and promotion, Plaintiff has also protected its valuable rights by owning several federal trademark registrations for MYPILLOW.

15. Night Moves Minnesota, LLC ("Night Moves"), a Minnesota limited liability company, filed an intent to use trademark application on July 1, 2004 for the

1  word mark "MYPILLOW" for pillows in International Class 020.  On January 7, 2008,
2  Night Moves filed an allegation of use.  In the allegation of use, Night Moves claimed a
3  date of first use anywhere of October 2004 and a date of use in interstate commerce of
4  October 2004.  The trademark registered on April 8, 2008 with US Registration No.
5  3,410,314 ("My Pillow Trademark Registration") for the trademark "MYPILLOW" in
6  connection with pillows.  A copy of the My Pillow Trademark Registration is attached
7  as Exhibit A and is incorporated by reference.

8       16.    On August 14, 2009, Night Moves assigned its entire interest in and to the
9  trademark "MYPILLOW," the My Pillow Trademark Registration, along with all
10 goodwill associated therewith, to My Pillow.

11      17.    My Pillow has been continuously using the MYPILLOW mark in
12 commerce since August 14, 2009 and Night Moves had continuously used the
13 MYPILLOW mark in commerce since 2004.

14      18.    On April 4, 2014, a declaration of incontestability under §15 of the
15 Trademark Act, 15 U.S.C. §1065 was accepted by the United States Patent and
16 Trademark Office. A true and correct copy is attached hereto as Exhibit B.

17      19.    In October 2004, Plaintiff developed the design logo

[My Pillow logo]

23 and continues to use the design logo as a common law trademark in California for
24 pillows, bedding and retail store services.  This common law trademark is the subject of
25 an application for federal trademark registration having application serial number
26 87/613,136 (Exhibit C).

28 / / /

### B. Plaintiff's "GUARANTEED THE MOST COMFORTABLE PILLOW YOU'LL EVER OWN" Trademark

20. Plaintiff also holds a registered trademark for "GUARANTEED THE MOST COMFORTABLE PILLOW YOU'LL EVER OWN" in connection with pillows in International Class 020. The trademark registered on October 9, 2012 with US Registration No. 4,221,351. A copy of the My Pillow Trademark Registration is attached as Exhibit D and is incorporated by reference.

21. Plaintiff first used the GUARANTEED THE MOST COMFORTABLE PILLOW YOU'LL EVER OWN mark in commerce on July 11, 2005 and has continuously used the mark in interstate commerce since then.

22. Plaintiff's MYPILLOW marks and common law trademark described above and the "GUARANTEED THE MOST COMFORTABLE PILLOW YOU'LL EVER OWN" marks are collectively referred to herein as the "My Pillow Marks".

### C. Plaintiff Has Spent Millions of Dollars on Advertising And Marketing of Products Under the My Pillow Marks.

23. On average, My Pillow spends over a $4,000,000 a month advertising its products sold under the My Pillow Marks. As a result of this substantial spending, My Pillow has grown the goodwill and recognition of its My Pillow Marks.

24. My Pillow has gone through great effort and expense in promoting its My Pillow Marks and developing consumer recognition and goodwill. My Pillow has spent in multiple tens of millions of dollars in national advertising for MY PILLOW brand pillows.

25. As a result of the significant advertising, promotion and sale of its MY PILLOW brand pillows, My Pillow has developed significant goodwill and customer recognition in the MY PILLOW Mark, making it famous. The MY PILLOW brand pillows, the company, and its founder Mike Lindell have been the subject of many unsolicited stories in various national publications, the Internet and on television.

26. The public views the MY PILLOW Mark as an indication of the high quality of My Pillow's pillow products.

**Defendants' Unauthorized Use of Plaintiff's My Pillow Marks**

27. Defendant Shopify is a web-based ecommerce provider. According to Shopify: "Shopify is a complete ecommerce solution that allows you to set up an online store to sell your goods. It lets you organize your products, customize your storefront, accept credit card payments, track and respond to orders — all with a few clicks of the mouse." *See* https://www.shopify.com/faq/what-does-shopify-do (Last accessed: April 2, 2018).

28. Shopify charges users a monthly fee plus fees for processing payments, including a percentage based fee for all credit card sales. *See* https://www.shopify.com/pricing (Last accessed: April 2, 2018).

29. On or about March 16, 2018, DOES 1-10 privately registered the domain name www.mypillowstore.com through Domains By Proxy, LLC. *See* Exhibit E.

30. Shortly thereafter, DOES 1-10 used Shopify's service to set up an ecommerce site that purports to sell "official" My Pillow brand pillow products. True and correct copies of Defendants' website is attached hereto as Exhibit E.

31. Defendants, without the consent or authorization of My Pillow, began advertising and promoting purported MYPILLOW brand pillows using the My Pillow Marks, as well as the image and likeness of My Pillow's founder and CEO, Mike Lindell.

32. Defendants have engaged in a number of willful and intentional activities that infringe Plaintiff's My Pillow Marks, constitute false advertising and unfair competition, and intentionally attempt to mislead consumers into purchasing products from the www.mypillowstore.com site.

33. For instance, Defendants purport to advertise and sell "official" My Pillow brand products on the website, www.mypillowstore.com, utilizing Defendant's Shopify

web hosting and sales platform, and using the My Pillow Marks in an effort to claim an affiliation with Plaintiff and trade off of Plaintiff's goodwill and brand recognition. *See* Exhibit F.

34. On information and belief, DOES 1-10 do not actually have My Pillow products to sell and set up the www.mypillowstore.com as a means to steal credit card and other personal information from unwitting consumers, causing further damage to Plaintiff's reputation and consumer goodwill.

**My Pillow Contacted Shopify To Remove the Infringing Content and Site**

35. On or about March 26, 2018, My Pillow sent correspondence to Defendant Shopify through its "Trademark Notice And Infringement Policy" procedures, notifying Shopify that a user of its services created a website, www.mypillowstore.com, and is using a variety of content that infringes My Pillow's valuable intellectual property rights. Specifically, Plaintiff advised Shopify that My Pillow is the owner of all right, title and interest in the My Pillow Marks and the MYPILLOW brand pillows.

36. That same day, Jason from "Shopify Legal Operations" responded: "This email is to inform you that we have passed along the Notice of Trademark Infringement to our Merchant consistent with our procedures relating to assertions of intellectual property infringement."

37. In response on March 26, 2018, My Pillow emailed Jason from Shopify Legal Operations and again advised Shopify of Defendants' actions described above and demanded that Shopify immediately cease and desist from using the MY PILLOW trademarks and any confusingly similar marks, including, but not limited to, "MY PILLOW". A true and correct copy of the March 26, 2018 correspondence is attached hereto as Exhibit G.

38. On March 27, 2018, My Pillow emailed Shopify again, demanding that Shopify remove the www.mypillowstore.com the My Pillow Marks from offending website. Shortly thereafter, Shopify removed the infringing content, however, it re-

appeared on March 29, 2018.

39. Plaintiff contacted Shopify again, and the My Pillow Marks were removed later that day on March 29, 2018.

40. However, Defendants resumed using the My Pillow Marks on March 30, 2018. Plaintiff again contacted Shopify and requested that the infringing content be removed. Plaintiff also sought information as to why the site was brought back online and how Shopify would ensure that this does not occur again. Finally, Plaintiff sought assurances that Shopify would not continue to allow content that infringes upon Plaintiff's intellectual property rights. A true and correct copy of the March 30, 2018 correspondence is attached hereto as Exhibit H.

41. On April 2, 2018, over 40 hours after it reappeared, Shopify finally again removed the infringing content. Plaintiff again requested information as to why Shopify allowed the infringing content to appear for a third time and assurances that it would not happen again. To date, Shopify has not responded to these requests.

42. Shopify clearly will not stop its unlawful conduct and will not terminate DOES 1-10's user account for www.mypillowstore.com unless enjoined by the Court.

43. Shopify has been aware of Plaintiff's My Pillow Marks and by not permanently deleting the user accounts or the www.mypillowstore.com site, Shopify has aided and abetted the violations of Plaintiff's MY PILLOW intellectual property rights. Based on Shopify's pricing policy, Shopify, on information and belief, earns money from each sale based on the infringing www.mypillowstore.com site.

44. Defendants' aforementioned actions are willful and reflect the intent to confuse, mislead and deceive customers and to profit from the goodwill associated with Plaintiff's My Pillow Marks.

/ / /
/ / /

## FIRST CAUSE OF ACTION

### (Trademark Infringement)

### (15 U.S.C. §1125(a) against all Defendants)

45. Plaintiff repeats and realleges the each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

46. The actions of Defendants described above and specifically, without limitation, their unauthorized use of the My Pillow Marks, and confusingly similar variations thereof, in commerce to advertise, promote, market, and sell pillow products throughout the United States, including California, constitute trademark infringement in violation of 15 U.S.C. §1125(a).

47. Defendants were, at the time they engaged in its actions as alleged herein, actually aware that Plaintiff is the owner of the My Pillow Marks.

48. Defendants did not seek, and failed to obtain, consent or authorization from Plaintiff, as the owner of the My Pillow Marks, to use the My Pillow Marks in connection with the advertising, marketing, promotion, offering for sale, and/or sale of its pillow products.

49. Defendants knowingly and intentionally used the My Pillow Marks in commerce in connection with the advertising, marketing, promotion, offering for sale, and/or sale of Defendant's pillow products.

50. Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the My Pillow Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

51. Defendants' continued, knowing and intentional use of Plaintiff's My Pillow Marks, without Plaintiff's consent or authorization, constitutes intentional infringement of Plaintiff's My Pillow Marks in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52. As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable

injury, loss and damage to its business and its valuable rights in and to Plaintiff's My Pillow Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable My Pillow Marks.

53. Based on Defendants' wrongful and infringing actions, Plaintiff is entitled to injunctive relief, as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**(False Designation of Origin, Passing Off, & Unfair Competition)**

**(15 U.S.C. §1125(a) and §1117(a) against all Defendants)**

54. Plaintiff repeats and realleges the each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

55. Plaintiff, as the owner of all right, title, and interest in and to the My Pillow Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

56. Defendants knowingly and intentionally used the My Pillow Marks in commerce in connection with the advertising, marketing, promotion, offering for sale, and/or sale of Defendants' pillow products. Defendants used false designations of origin and false and misleading descriptions and/or representations on or in connection with the advertising, marketing, promotion, offering for sale, and/or sale of its pillow blanket products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' pillow products are

Plaintiff's MY PILLOW Product or a related product, that Defendants' pillow products are authorized, sponsored, approved, endorsed or licensed by Plaintiff, and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of the pillow products and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiff's My Pillow Marks, to Defendants' substantial profit, in blatant disregard of Plaintiff's rights.

57. By using Plaintiff's My Pillow Marks without authorization in connection with the advertising, marketing, promotion, offering for sale, and/or sale of Defendants' pillow products, Defendants have traded off the extensive goodwill of Plaintiff and its MY PILLOW Product and did, in fact, induce, and intends to and will continue to induce, customers to purchase Defendants' pillow products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted, and will continue to permit, Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its My Pillow Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

58. Defendants knew, or by the exercise of reasonable care, should have known, that its unauthorized use in commerce of Plaintiff's My Pillow Marks would cause confusion, mistake, or deception among purchasers, users and the public.

59. Defendants' actions described above and specifically, without limitation, Defendants' use of the My Pillow Marks, and confusingly similar variations thereof, in commerce to advertise, market, and sell pillow products throughout the United States including California constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

60. Defendant's actions have been knowing, deliberate and willful and have been committed with knowledge of Plaintiff's exclusive rights and goodwill in its My Pillow Marks, as well as with bad faith and the intent to cause confusion, mistake and deception and trade on the goodwill and reputation of Plaintiff, its MYPILLOW brand

Products and its My Pillow Marks.

61. As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to Plaintiff's My Pillow Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable My Pillow Marks.

62. Based on Defendants' wrongful and infringing actions, Plaintiff is entitled to injunctive relief, as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (Common Law Trademark Infringement)

63. Plaintiff repeats and realleges the each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

64. Defendants have used and continue to use the My Pillow Marks to promote, market, or sell pillows in the State of California.

65. Defendants' use of the My Pillow Marks are likely to cause confusion, to cause mistake, and/or to deceive as to the source of origin or affiliation of Defendant's goods.

66. Defendants' actions in California constitute trademark infringement and unfair competition under the Common Law of California.

67. Plaintiff has been irreparably injured and will continue to be irreparably injured unless the conduct of Defendants in California is preliminarily and permanently

enjoined.

68. Upon information and belief, Defendants undertook the adoption of the My Pillow Marks willfully or with reckless intention of trading upon the good will of Plaintiff.

## FOURTH CAUSE OF ACTION
### (Common Law Unfair Competition)

69. Plaintiff repeats and realleges the each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

70. The actions of Defendants described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of the My Pillow Marks, and confusingly similar variations thereof, in commerce to advertise, market, and sell pillow products throughout the United States and California, constitute contributory trademark infringement in violation of federal law and the common law.

71. The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the MY PILLOW Mark, and injury to Plaintiff's business.

72. On information and belief, the actions of Defendants described above were and continue to be deliberate and willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For entry of a preliminary and permanent injunction enjoining Defendants from using any of Plaintiff's My Pillow Marks and/or a mark or URL confusingly similar to any of Plaintiff's My Pillow Marks or URL;

2. For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory

damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for trademark infringement under 15 U.S.C. §1125(a);

3. For an award of Defendant's profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

4. For an award of damages to be proven at trial for common law unfair competition;

5. For an award of exemplary or punitive damages in an amount to be determined by the Court;

6. For Plaintiff's reasonable attorney's fees;

7. For all costs of suit; and

8. For such other and further relief as the Court may deem just and equitable.

DATED: April 3, 2018                    BESHADA FARNESE LLP

                                        By:   s/ Peter J. Farnese
                                              Peter J. Farnese

                                        *Attorneys for Plaintiff,*
                                        *My Pillow, Inc.*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: April 3, 2018          BESHADA FARNESE LLP

By:   s/ Peter J. Farnese
      Peter J. Farnese

*Attorneys for Plaintiff,*
*My Pillow, Inc.*